Thank you, everyone. Okay. Appeal 1429-57, Octavia Mitchell v. The City of Chicago. We actually only have one person stand. Okay, thank you. I didn't understand. Oh, we're fine. We're fine. Excuse me. Good morning, Your Honors. Good morning. May it please the Court, my name is Phillip Aaron, and I'm the attorney for Octavia Mitchell. I'm the personal representative in the state of Isel Jackson. This matter is before the Court, pursuant to the appellate decision from the District Court. Isel Jackson was an 18-year-old young African-American male, high school senior, who was shot in the back by Chicago police. The issue at the court below was whether or not DNA evidence that had been collected by the police department was admissible and was relevant to the issue of liability of the police officers. Now, could the plaintiff have tested the DNA swabs? There's a hint in the briefing that the DNA evidence was exclusively in the hands of the defendant, but how or was the plaintiff prevented from doing her own testing of the swabs in a timely fashion? Well, Your Honor, first of all, I was not the attorney in the case below, but from my understanding is that there was an effort to inquire about the DNA evidence and there was a refusal by someone to give it to the attorney. Now, I don't know that. I was not the attorney below. So then, because that was my question, too, if you could shed any light as to why the question about DNA testing was delayed until five months after the close of the discovery. I don't know. So you're not in a position to answer it because you weren't trial counsel? Yes. I can say, Your Honor, that the issue of the DNA was not only in regard to the subpoena for DNA evidence of information, it also pertains to the effort on the part of counsel to inquire at trial about the collection and storage of DNA evidence. That's important in this case because we're dealing with the Fourth Amendment and the issue of whether or not the police officers were justified in using deadly force, which resulted in the death of this young man. And considering that, the court should bear in mind that this is a constitutional right that the plaintiff is trying to protect. And he was trying to submit evidence that showed that that right had been violated. Now, the... And I am sympathetic to that argument where I have trouble is by the time you're at trial, you have the officers who were the actual shooters. Yes. And only those two as the defendants. And you're in a civil setting, so it's your client's obligation to show by their behavior that they violated the Fourth Amendment. And in doing so, I'm not sure how... And I think the problem for the trial judge was it's not clear how conduct by the police department in not testing evidence is really relevant. They had no control over that. In fact, they weren't even allowed to be part of the investigation. It was conducted by the Illinois State Police. So the problem with saying you introduce it as a plaintiff, I'm not sure what the relevance is at trial with respect to those two defendants. Well, Your Honor, the plaintiff had a requirement to show that the shooting was not justified. To do that, the plaintiff in his case in chief should be able to submit evidence that would go to that issue. I do want to try to understand the argument. I mean, you were allowed to show, the plaintiff was allowed to show that there were no fingerprints on the gun. Yes. The plaintiff was allowed to show that there was no other identifying information that placed it in the plaintiff's son's hand. And I realize this is, I don't realize, I can't imagine what it's like to experience something like that. But at the end of the day, it's just evidence or absence of evidence that the plaintiff was allowed to show. But the fact that the state police did or did not investigate or actually do DNA testing is really beyond the control of the defendant. Since the court had excluded this conspiracy theory of a cover-up, I'm not sure where it becomes relevant that there was DNA or it wasn't tested or was tested. Yes. Your Honor, the... Since I think it's your burden of proof, which sort of goes back to the original question. Yes. If it was your burden to establish that, then it was probably the plaintiff's burden to have the DNA testing done. Your Honor, there was a motion eliminated which prevented the counsel from exploring the DNA, the questions about the DNA evidence. Right, right. Now, not about the issue of testing. The issue of testing... But the fact, you wanted to introduce the fact that there was DNA evidence. And to pursue that line of questioning to find out where along the chain of possession... ...is that there is no DNA evidence because the swabs were never tested. Now, you were not trial attorney, but of course the trial attorney could have had them tested, but did not. So there's an equal inference. That it would not have favored plaintiff as it would have. And it would have been unfair to allow any plaintiff to argue a cover-up when none of the defendants were involved in the investigation. And that's the high hurdle in this case. Yes. Your Honor, this was not a case where the defendant was necessarily arguing a cover-up. The defendant was trying to show that their Fourth Amendment right had been violated. And to show that, the defendant was trying to introduce evidence that would indicate that the deceased was unarmed. Yeah, but see, the problem is, to bring the DNA evidence in, to bring in speculation. Well, maybe his DNA was on the gun, maybe his DNA wasn't on the gun. Okay, so, but that's not good enough. You can't bring it in speculatively. And so since there was no request, the subpoena was issued five months after discovery closed. That testimony couldn't come in. We're all sympathetic to the Fourth Amendment and the horrendous outcome in this case that this young man died. The problem is, the subpoena wasn't issued in time, and there was no request to have the DNA analyzed. Yes. Your Honor, at trial, counsel should have had an opportunity to explore the questions related to the DNA. What happened to the swab? Well, and so that, see, is part of what happens in discovery. So if there had been a request for depositions or interrogatories that would have said what happened to the DNA, where is it, you know, who was responsible for the chain of custody, all of those things could be done in discovery. None of those things were done. No, I understand, Your Honor. They should have been done. Right. What I'm saying is that at trial, the opportunity to explore the issue of the collection and the storage of the DNA should have been allowed for the plaintiff to do. But generally you can't do that if you haven't had some basis for asking those questions, and you usually get the basis when you get depositions or you get responses to interrogatories or things like that. Well, Your Honor, the motion on limine was brought by the defendants, was a motion that dealt with the DNA swabs and the fact that they weren't tested and the fact that the assumption was that the plaintiff counsel wanted to bring it in for the purpose of attacking the quality of the investigation. What we're trying to point out is that we were trying to bring in the DNA in order to show that, address the issue of whether or not the deceit was armed. In this case, the police are saying that they feared for their lives because this young man had a gun and was shooting at them. Well, if that is the basis for their justification, then it's very critical that the fact of whether or not this young man was armed should have been paramount to the determination at the court. And the issue of the DNA and questioning what happened to the DNA goes to that issue of whether or not he was armed because the DNA goes to the issue of identification. Thank you. Okay. Okay. Thank you. Thank you. Mr. Breyer. Good morning and may it please the court. This court should affirm the judgment of the district court. I want to start by just addressing a representation made by counsel for the appellant implying that the city in some way prevented or obstructed the plaintiff, Ms. Mitchell, from testing the DNA here. There's absolutely nothing in the record I'm aware of. This is the first time this accusation has been made. The first time this accusation has been made was during these opening statements here. There's nothing in the record. And on page 721, the city actually noted during one of the sidebars that Ms. Mitchell had been open to testing the DNA. Defense counsel opened with the statement that the young man here was shot in the back. Is that what the evidence was, that the only bullet entries were in his back? The evidence here, the testimony of the officers here was that during this I'm talking about forensically. What is the evidence, or do you even know what the evidence is with respect to the entry of the bullet wounds? I'm not familiar with the forensics, but my understanding of the testimony based on what happened was that even if the forensics showed that, it's consistent with the officer's story. The officer's testimony here was that he was turned and shooting. And then they returned fire, and at that point he was turning to the side or perhaps even fleeing. But you're not disagreeing that there were no frontal shots. It was to the side or to the back. I would have to review the record. That was not an issue that was raised here. That's why I'm asking, because I couldn't find it in the record. I'll double-check the record just to assist this court. And if I can answer that question more helpfully, then I will file a letter. The city, of course, claims it had nothing to do with deciding whether to test the DNA swabs. That's correct. Is there an affidavit to that effect in the record? Is that fact disputed in any way? There's not an affidavit that I know of, but there's no dispute on that point, that the Illinois State Police would have been responsible for the ultimate testing of the DNA. And my understanding, it's outside this record, is that if there had been a prosecution, if Mr. Jackson had survived and had been prosecuted for this incident, there would have been DNA testing. But that's my understanding of what the cutoff is. But, again, that's not in the record. There may be nuances. So that's the reason, then, that the DNA swab evidence was not tested because it wasn't a criminal case? That's my understanding. Again, that's outside the record, so there may be nuances I'm not familiar with. No, if Mitchell had asked for DNA, I mean, I assume that Mitchell could have gotten the DNA and taken it to an expert of her choosing to have it tested. And that was not done here. The first ruling in this record regarding anything relating to this DNA was the subpoena that was quashed because it was untimely. And that was solely because it was severely untimely. It was several months past the close of discovery after the district court had reminded the parties that no further discovery would be allowed. And then the subpoena was issued. And even that subpoena didn't go to the actual, you know, I want to be very clear that there's the difference between questions regarding the DNA and the results of DNA testing. And the subpoena appeared to be directed solely towards who made these decisions, who handled the DNA, matters of that sort. It had nothing to do that I could tell with the actual results because there were none. No results. There were no results. There were no results. And the city at no point ever during this trial made any objections or any attempt to bar or ask the district court to exclude evidence of the results of DNA testing just because there weren't any. And Ms. Mitchell never attempted to introduce those. The rulings here are much more limited. If this court has no further questions. No. We respectfully request that you affirm the judgment of the district court. Thank you. Mr. Aaron, you used up your time, but we'll give you an extra minute or two. Thank you, Your Honor. Your Honor, first of all, the court should be aware that the initial collection of DNA was done during the process of a criminal investigation. The DNA was collected by the forensic expert with the Chicago Police Department, and it was done the night of the shooting before the deceased expired. So it was a criminal investigation. And then in reference to the shots, there were no frontal shots, Your Honor. There were no frontal shots. This happened as this young man was fleeing from the police. Was there forensics evidence of the earlier shots? In other words, either in the car or that it shattered the window, was there evidence that Mr. Jackson had, or someone, I should say, had fired shots at the police? There's evidence by the police testimony and the sheriff. Not testimony. I'm talking about forensics evidence as to whether shots had been fired at the police vehicle or the police or some showing. I know the gun that was on the ground had apparently been fired according to the ballistics test. Yes. But what was the direction of the firing? Is there evidence of those shots having been directed at the police? Yes, there was evidence of that, Your Honor. Thank you. The shots were directed at the police. There's no doubt about that. The point here is that that weapon that was recovered is not connected in any way to the deceased. Understood. In any way whatsoever. And that weapon is the central, should be the central focus of the inquiry here because if he was armed or not armed, goes to the issue of whether or not they were justified. Can I just say this one thing with the Court's permission? Of course. There's a public policy issue here. And with the Court's permission, I'd like to just read, if I could, a statement from the Justice Department in reference to DNA collection at the Chicago Police. Go ahead. In the Justice Department report at page 64, it reads, our review of the IPRA's investigative file identified other deficiencies and irregularities that related to the collection, analysis, and reporting of physical evidence. Although the IPRA procedure manual state physical evidence is crucial in any case and, quote, investigators should pay close attention to physical evidence, we found IPRA files lacking in key respects. SPD, excuse me, CPD, I believe that's Chicago Police Department, CPD routinely swabs recovered weapons in suspect's hand for DNA and gunshot residue so it may determine whether an individual held or fired a weapon. Most police officers involved shootings. Files we reviewed noted that the collection of DNA and GPR evidence rarely did the files contain lab results of DNA tests or explanation as to why they were missing. More frequently we saw lab results of GSR tests, but in most cases IPRA only mentioned the results in the rationale for their finding when the results corroborated the police account. This outcome is troubling, especially in cases where there were sharp disputes between officers and surveillance. We have that dispute. We have two witnesses that said this young man was an animal. Thank you very much. Thanks to both parties. The case will be taken under advice. Thank you. Okay.